UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                      :

CHANGXING LI, GUOMIN LI, JIAN LI,
YUXIANG WANG, and MIN ZHANG,     :

         Plaintiffs,          :

      -against-         :

KAI XIANG DONG, LING LIN, IRON SUSHI    :
THIRD AVENUE, INC. d/b/a IRON SUSHI,
IRON SUSHI LOVE, INC. d/b/a IRON SUSHI,   :
IRON SUSHI FUSION, INC. d/b/a IRON SUSHI,

                     :

        Defendants.

                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

15 Civ. 7554 (GBD) (AJP)

**REPORT & RECOMMENDATION**

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable George B. Daniels, United States District Judge:**

        On August 8, 2016, Judge Daniels referred plaintiffs' initial motion for default judgment to me for an inquest. (Dkt. No. 24.) Plaintiffs thereafter withdrew their motion, filed and served an Amended Complaint (Dkt. No. 29), and on December 9, 2016, the Clerk of Court entered a default against defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure (Dkt. No. 50). Presently before the Court is plaintiffs' December 16, 2016 renewed motion for default judgment. (Dkt. No. 51.)

        For the reasons discussed below, the Court should grant plaintiffs' motion (Dkt. No. 51) and enter judgment for plaintiffs against defendants, jointly and severally, as follows: $88,763.10 for Changxing Li (plus continuing prejudgment interest of $3.92 per day); $100,203.32 for Guomin Li (plus continuing prejudgment interest of $6.60 per day); $37,607.89 for Jian Li (plus continuing prejudgment interest of $0.73 per day); $80,675.68 for Yuxiang Wang (plus continuing

prejudgment interest of $2.74 per day); $48,055.17 for Min Zhang (plus continuing prejudgment interest of $0.72 per day), plus attorneys' fees and costs of $24,372.55.

## FACTS

"Where, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 3d § 2688 at 58-59 (3d ed. 1998)).

## The Complaint

The amended complaint (Dkt. No. 29) alleges as follows:

Defendants own and operate Iron Sushi, a restaurant located at 440 Third Avenue in Manhattan.  (Am. Compl. ¶¶ 16-22.)  Defendants Kai Xiang Dong and Ling Lin, as owners and/or managing agents of Iron Sushi, held the power to hire and fire plaintiffs, control the terms and conditions of their employment, maintain employment records and determine the rate and method of compensation.  (Id. ¶¶ 16-19.)

During their employment, plaintiffs worked either six full day shifts, lasting eleven and a half hours per day, or five full day shifts plus two half day shifts, lasting six hours per day, for a total of at least sixty-nine hours per week.  (Id. ¶¶ 11-15, 46.)  Defendants paid plaintiffs wages of approximately $850 to $1,400 per month, excluding tips, violating the minimum wage and overtime compensation provisions of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  (Am. Compl. ¶¶ 45, 47-52, 59, 61-63.)  Defendants did not pay spread of hours for each day that plaintiffs worked more than ten hours (id. ¶¶ 64-66) or inform plaintiffs of their intention to take tip credits against their wages (id. ¶ 58).  Defendants failed to maintain sufficient

time records, and required plaintiffs to purchase and maintain trade tools (electric bicycles and batteries) as a condition of their employment.  (Id. ¶¶ 39-40, 67-70, 74, 86, 129-34.)  Defendants did not provide plaintiffs with wage notices or wage statements as required by the NYLL.  (Id. ¶¶ 57-58, 71-73, 122-27.)

The amended complaint alleges that defendants' violations of the FLSA and NYLL were willful.  (Id. ¶¶ 87, 101, 107-08, 113-14, 118-19.)  The amended complaint asserts claims for unpaid minimum and overtime wages pursuant to the FLSA and NYLL (id. ¶¶ 79-90, 92-101, 104-08, 110-14), spread of hours pursuant to the NYLL (id. ¶¶ 116-19), statutory damages for NYLL wage statement violations (id. ¶¶ 121-26), and costs to purchase and maintain bicycles (id. ¶¶ 128-35).  The amended complaint also seeks liquidated damages under both the FLSA and NYLL (id. Wherefore ¶¶ d-i), pre and post-judgment interest (id. ¶ m), and attorneys' fees and costs (id. ¶ n).

**Inquest Submissions**

**Changxing Li**

Plaintiff Changxing Li filed an affidavit stating that he worked for defendants as a delivery person from April 15, 2012 until August 17, 2015.  (Dkt. No. 53: Yan Aff. Ex. G: Changxing Aff. ¶ 2.)  During this time, Changxing[1] took vacation from March 3, 2014 to April 16, 2014, and March 1, 2015 to April 16, 2015.  (Id.)  Every week, Changxing worked either six eleven and a half hour shifts, or five eleven and a half hour shifts plus two six hour shifts.  (Id. ¶ 3.)  Changxing received cash wages of $1,000 per month (excluding tips) from April 15, 2012 to December 31, 2013, and $1,100 per month (excluding tips) from January 1, 2014 to August 17,

---

[1]    Because three plaintiffs share the name "Li", the Court will refer to them by their "first" names.  No disrespect is intended.

2015.[2]  (Id.)  Changxing purchased an electric bicycle for $1,400, which had a useful life of two years, and replaced the battery every year for $450.  (Id. ¶ 7.)  Other bicycle maintenance costs totaled at least $200 per year.  (Id.)  Defendants never informed or provided notice to Changxing of the minimum wage and overtime laws or their intentions to take a tip credit against his wages. (Id. ¶¶ 8-9.)  Defendants also failed to provide wage statements or any acknowledgment of his pay rate.  (Id. ¶¶ 10-11.)

### Guomin Li

Plaintiff Guomin Li filed an affidavit stating that he worked for defendants as a delivery person from October 1, 2011 until July 5, 2015.  (Dkt. No. 53: Yan Aff. Ex. H: Guomin Aff. ¶ 2.)  Guomin took vacation from approximately April 8, 2015 to May 8, 2015.  (Id.)  Every week, Guomin worked six eleven and a half hour shifts.  (Id. ¶ 3.)  Guomin received cash wages of $1,100 per month from October 1, 2011 to December 31, 2012, $1,200 per month from January 1, 2013 to June 30, 2014, and $1,400 per month from July 1, 2014 to July 4, 2015.  (Id. ¶ 3.)  Guomin purchased an electric bicycle for $1,400, which had a useful life of two years, and replaced the battery every year for $450.  (Id. ¶ 7.)  Other bicycle maintenance costs totaled at least $200 per year.  (Id.)  Defendants never informed or provided notice to Guomin of the minimum wage and overtime laws or their intentions to take a tip credit against his wages.  (Id. ¶¶ 8-9.)  Defendants also failed to provide wage statements or any acknowledgment of his pay rate.  (Id. ¶¶ 10-11.)

### Jian Li

Plaintiff Jian Li filed an affidavit stating that he worked for defendants as a delivery person from September 15, 2013 until August 9, 2014, and from September 7, 2014 to December

---

[2]    Unless otherwise indicated, the wage amounts for all plaintiffs exclude amounts they may have received in tips.

31, 2014.  (Dkt. No. 53: Yan Aff. Ex. I: Jian Aff. ¶ 2.)  Every week, Jian worked either six eleven and a half hour shifts or five eleven and a half hour shifts plus two six hour shifts.  (Id. ¶¶ 2-3.)  Jian received cash wages of $900 per month from September 15, 2013 to January 31, 2014, and $1,000 per month from February 1, 2014 to August 9, 2014 and from September 7, 2014 to December 31, 2014.  (Id. ¶ 3.)  Jian purchased an electric bicycle for $1,400, which had a useful life of two years, and replaced the battery every year for $450.  (Id. ¶ 7.)  Other bicycle maintenance costs totaled at least $200 per year.  (Id.)  Defendants never informed or provided notice to Jian of the minimum wage and overtime laws or their intentions to take a tip credit against his wages.  (Id. ¶¶ 8-9.)  Defendants also failed to provide wage statements or any acknowledgment of his pay rate.  (Id. ¶¶ 10-11.)

### Yuxiang Wang

Plaintiff Yuxian Wang filed an affidavit stating that he worked for defendants as a delivery person from June 10, 2012 until September 15, 2012 and then from February 3, 2013 to August 15, 2015.  (Dkt. No. 53: Yan Aff. Ex. J: Wang Aff. ¶ 2.)  Wang took vacation from approximately April 6, 2015 to June 10, 2015.  (Id.)  Every week, Wang worked five eleven and a half hour shifts plus two six hour shifts.  (Id. ¶ 3.)  Wang received cash wages of $850 per month from June 10, 2012 to September 15, 2012, $900 per month from February 3, 2013 to December 31, 2013, $1,000 per month from January 1, 2014 to December 31, 2014, and $1,100 per month from January 1, 2015 to August 15, 2015.  (Id.)  Wang purchased an electric bicycle for $1,400, which had a useful life of two years, and replaced the battery every year for $450.  (Id. ¶ 7.)  Other bicycle maintenance costs totaled at least $200 per year.  (Id.)  Defendants never informed or provided notice to Wang of the minimum wage and overtime laws or their intentions to take a tip credit against his wages.  (Id. ¶¶ 8-9.)  Defendants also failed to provide wage statements or any

acknowledgment of his pay rate.  (Id. ¶¶ 10-11.)

**Min Zhang**

Plaintiff Min Zhang filed an affidavit stating that he worked for defendants as a delivery person from May 1, 2014 to August 28, 2015.  (Dkt. No. 53: Yan Aff. Ex. K: Zhang Aff. ¶ 2.)  Every week, Zhang worked either six eleven and a half hour shifts or five eleven and a half hour shifts plus two six hour shifts.  (Id. ¶ 3.)  Zhang received cash wages of $1,000 per month.  (Id.)  Zhang purchased an electric bicycle for $1,400, which had a useful life of two years, and replaced the battery every year for $450.  (Id. ¶ 7.)  Other bicycle maintenance costs totaled at least $200 per year.  (Id.)  Defendants never informed or provided notice to Zhang of the minimum wage and overtime laws or their intentions to take a tip credit against his wages.  (Id. ¶¶ 8-9.)  Defendants also failed to provide wage statements or any acknowledgment of his pay rate.  (Id. ¶¶ 10-11.)

**Plaintiffs' Calculations Chart**

Plaintiffs' attorney attached a chart to his affidavit, dividing plaintiffs' employment into periods based upon their wages, the year, and detailing the damage calculation during each period.  (Dkt. No. 53: Yan Aff. Ex. L.)  Plaintiffs seek unpaid minimum, overtime and spread of hour wages, double liquidated damages (i.e., under both the FLSA and NYLL), statutory penalties for wage notice and wage statement violations, bicycle expenses, and prejudgment interest, in the following amounts: $162,936.69 for Changxing Li, $173,981.36 for Guoming Li, $72,264.56 for Jian Li, $144,290.30 for Yuxiang Wang, and $83,556.94 for Min Zhang.  (Id.)  Plaintiffs also seek $32,232 in attorneys' fees and costs.  (Yan Aff. ¶ 21 & Exs. M & N.)

## ANALYSIS

### I.   APPLICABLE LEGAL STANDARDS

The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'"  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct.  See, e.g., Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) ("[A]n employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."); Kuebel v. Black & Decker Inc., 643 F.3d 352, 362-64 (2d Cir. 2011); Grochowski v. Phoenix Constr., 318 F.3d 80, 87-88 (2d Cir. 2003); Harold Levinson Assocs., Inc. v. Chao, 37 F. App'x 19, 20 (2d Cir. 2002), cert. denied, 546 U.S. 933, 126 S. Ct. 415 (2005); Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 66 (2d Cir. 1997); Zhen Ming Chen v. New Fresco Tortillas Taco LLC, 15 Civ. 2158, 2015 WL 5710320 at *2 (S.D.N.Y. Sept. 25, 2015) (Peck, M.J.); Carrasco v. W. Vill. Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *2 (S.D.N.Y. July 11, 2012)

(Peck, M.J.), R. & R. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012).[3/]

## II.    APPLICATION OF THE STANDARDS TO THIS CASE

The Court has reviewed plaintiffs' declarations (Dkt. No. 53: Yan Aff. Exs. G-K) and damages calculations (Yan Aff. Ex. L) and accepts plaintiffs' estimates of hours worked.

### A.    Statute of Limitations

Plaintiffs bring claims pursuant to the FLSA and NYLL.  The statute of limitations is six years under the NYLL and two years under the FLSA, increased to three years for "willful" violations.  See N.Y. Labor Law § 198(3); 29 U.S.C. § 255(a).  The amended complaint alleges that defendants' FLSA and NYLL violations were willful.  (See page 8 above.)  By virtue of the entry of default, the Court accepts plaintiffs' allegations as true.  See, e.g., Baltierra v. Advantage Pest Control Co., 14 Civ. 5917, 2015 WL 5474093 at *3 (S.D.N.Y. Sept. 18, 2015) (Peck, M.J.); Alvarez v. 215 N. Ave. Corp., 13 Civ. 7049, 2015 WL 3855285 at *1, *3 (S.D.N.Y. June 19, 2015); Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *4 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); Wicaksono v. XYZ 48 Corp., 10 Civ. 3635, 2011 WL 2022644 at *6 (S.D.N.Y. May 2, 2011) ("[T]he defendant is in default, and therefore the plaintiffs' allegation that its conduct was willful is credited."), R. & R. adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011); Jin M. Cao v. Wu

---

[3/]     See also, e.g., Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *2 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); Alejo v. Darna Rest., 09 Civ. 5436, 2010 WL 5249383 at *3 (S.D.N.Y. Dec. 17, 2010) (Peck, M.J.), R. & R. adopted as modified, 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011); Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 313483 at *23-24 (S.D.N.Y. Feb. 1, 2007) (Lynch, D.J.); Liu v. Jen Chu Fashion Corp., 00 Civ. 4221, 2004 WL 33412 at *3 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.); Moon v. Kwon, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002) (Lynch, D.J.); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 624-25 (S.D.N.Y. 1998) (R. Carter, D.J. & Peck, M.J.).

Liang Ye Lexington Rest., Inc., 08 Civ. 3725, 2010 WL 4159391 at *2 (S.D.N.Y. Sept. 30, 2010)

(Chin, D.J.) ("[D]efendants defaulted and thus plaintiffs' allegations that the FLSA violations were

willful are deemed admitted.").

Accordingly, the three-year statute of limitations applies to plaintiffs' FLSA claims

and the six-year statute of limitations applies to their NYLL claims.  Since plaintiffs' complaint was

filed on September 24, 2015 (Dkt. No. 1), they are entitled to recover damages for FLSA violations

from September 24, 2012, and for NYLL violations from the beginning of their employment (no

plaintiff worked for defendants for any period outside the six year NYLL limitations period).

### B.   Minimum Wage and Overtime Pay

The FLSA requires employers to pay employees at least the federal minimum wage

for every hour worked.  29 U.S.C. § 206.  Where the state minimum wage exceeds the federal

minimum wage, federal law does not preempt the higher state minimum.  See 29 U.S.C. § 218(a)

("No provision of this chapter or of any order thereunder shall excuse noncompliance with any

Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum

wage established under this chapter . . . .").  The NYLL also protects against minimum wage

underpayment.  12 N.Y.C.R.R. § 142-2.1.  Furthermore, the FLSA and NYLL require employers

to pay employees at least one and one-half times the minimum wage for any hours over forty

worked in a given week.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.

The statutory minimum wage under New York and federal law between October

2011 and December 30, 2013 was $7.25 per hour.  12 N.Y.C.R.R. § 142-2.1(a)(2); 29 U.S.C. §

206(a)(1)(C).  From December 31, 2013 to December 30, 2014, New York's minimum wage was

$8.00 per hour, and from December 31, 2014 to December 30, 2015, New York's minimum wage

was $8.75 per hour, both exceeding the federal minimum wage of $7.25 for the corresponding time

periods.  N.Y. Labor Law § 652(1); see 29 U.S.C. § 206.

**1.    Defendants Are Not Entitled To A "Tip Credit"**

An employer may elect to pay tipped employees less than the statutorily prescribed minimum wage if the employees' total compensation, measured by the sum of tips actually received and hourly wages, equals at least the minimum wage.  29 U.S.C. § 203(m); 12 N.Y.C.R.R. § 137-1.1-1.3.  Moreover, the employer must inform the employee of the tip credit rules.  29 U.S.C. § 203(m).  "Courts have interpreted that provision to require that an employer satisfy two conditions: (1) inform the employee of the 'tip credit' provision of the FLSA, and (2) permit the employee to retain all of the tips the employee receives to qualify for the tip credit."  Khereed v. W. 12th St. Rest. Grp. LLC, 15 Civ. 1363, 2016 WL 590233 at *2 (S.D.N.Y. Feb. 11, 2016) (quotation omitted).

Likewise, under the NYLL, employers are entitled to a tip credit for service employees.  12 N.Y.C.R.R. § 146-1.3(a).  Similar to federal law, an employer may not take a state tip credit unless the employer has given the employee written notice stating: (1) the amount of tip credit to be taken against the hourly minimum wage; and (2) that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.  12 N.Y.C.R.R. § 146-2.2(a); see also id. § 146-1.3 ("An employer may take a credit towards the basic minimum hourly rate if [the tipped employee] receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part.").  The employer must provide the notice in English and "any other language spoken by the . . . employee as his/her primary language," and retain an acknowledgment of receipt of such notice for six years.  12 N.Y.C.R.R. § 146-2.2(a), (c).

Defendants here were not entitled to take credit under the FLSA or NYLL since defendants did not advise plaintiffs of their right to an undiminished wage if their tips fell short of the tip credit taken, or of their right to be paid the minimum wage; nor did defendants provide

plaintiffs with written notice of the tip credit at all, let alone in Chinese, their native language.  (See pages 3-6 above.)  Consequently, plaintiffs are entitled to unpaid minimum wages at the full minimum wage rate.

### 2.   Minimum Wage Calculations

To calculate unpaid minimum wages, plaintiffs' counsel first separated the damages calculations into multiple time periods for each plaintiff.  (Dkt. No. 53: Yan Aff. Ex. L: Damages Summ.)  This allowed counsel to account for vacation time, changes in plaintiffs' wages, and changes in the statutory minimum wage.  Within each time period, counsel determined the "Total Weekly Wage Owed" by multiplying the hours worked per week by the relevant statutory minimum wage and overtime wage.  (Id.)  Counsel calculated the "Wage Received Per Week" that plaintiffs actually were paid by multiplying the monthly payment by 12 and then dividing by 52 weeks.  (Id.)  The difference between these figures is the underpayment per week for that time period.  Multiplying this figure by the number of weeks within the period results in the total underpayment for the period.  (Id.)

### a.   Changxing Li

For the period of April 15, 2012 through December 30, 2013, plaintiff Changxing Li was entitled to $594.50 per week (($7.25 x 40 hours per week) + ($10.875 x 28 hours per week))[4] for minimum and overtime wages.[5]  (Dkt. No. 53: Yan Aff. Ex. L: Calculations Summ.)  Changxing

---

[4]   While Changxing's affidavit states he worked sixty nine hours a week, i.e., twenty nine hours of overtime, plaintiffs' chart uses twenty eight hours a week of overtime, and the Court therefore uses that number.

[5]   In plaintiffs' calculations chart, plaintiffs distinguished the periods eligible for FLSA damages.  The Court will utilize the NYLL amounts because the NYLL covers the full duration of all plaintiffs' employments and provides the greater award.

received $1,000 in wages from April 15, 2012 to December 31, 2013. (See page 3 above.) Changxing's Wage Received Per Week was $230.77 (($1000 x 12) / 52). The difference between Changxing's actual and earned pay ($594.50- $230.77) results in an underpayment of $363.73 per week, over the course of 89.285714 weeks.[6/] The underpayment, therefore, totals $32,475.89. (See Calculations Summ.)

For the periods of December 31, 2013 to March 2, 2014, and April 17, 2014 to December 30, 2014, the state minimum wage rose to $8.00 per hour (see page 9 above), entitling Changxing to $656 per week (($8.00 x 40 hours per week) + ($12.00 x 28 hours per week)) for minimum and overtime wages. Changxing received $1,100 in wages per month from January 1, 2014 to December 30, 2014. (See page 3 above.) Changxing's Wage Received Per Week was $253.85 (($1,100 x 12) / 52). The difference between Changxing Li's actual and earned pay ($656 - $253.85) results in a weekly underpayment of $402.15 over the course of 45.714286 weeks for a total of $18,384.00. (See Calculations Summ.)[7/8/]

For the periods of December 31, 2014 to February 28, 2015 and April 17, 2015 to August 17, 2015, the state minimum wage rose to $8.75 per hour (see page 9 above), entitling Changxing to $717.50 per week (($8.75 x 40 hours per week) + ($13.125 x 28 hours per week)) for minimum and overtime wages. The difference between Changxing's actual and earned pay ($717.50 - $253.85) results in a weekly underpayment of $463.65 over the course of 26.142857 weeks for a

---

[6/]     625 days passed from April 15, 2012 to December 30, 2013, or 89.285714 weeks. The Court calculated all day differences using the website www.calculator.net/date-calculator.html.

[7/]     320 days passed from December 31, 2013 to March 2, 2014 and from April 17, 2014 to December 30, 2014, or 45.714285 weeks.

[8/]     Plaintiffs' counsel calculated this period to be 46 weeks for a total of $19,258.62.

total of $12,121.14.  (See Calculations Summ.)[9/10/]

Thus, defendants owe Changxing a total of $62,981.03 in unpaid minimum and overtime wages.[11/]

### b.   Guomin Li

For the period of October 1, 2011 through December 31, 2012, plaintiff Guomin Li was entitled to $605.38 per week (($7.25 x 40 hours per week) + ($10.875 x 29 hours per week)) for minimum and overtime wages.  (See Dkt. No. 53: Yan Aff. Ex. L: Calculations Summ.)  Guomin received $1,100 per month in wages from October 1, 2011 to December 31, 2012.  (See page 4 above.)  His Wage Received Per Week was $253.85 (($1,100 x 12) / 52).  The difference between Guomin's actual and earned pay ($605.38 - $253.85) results in a weekly underpayment of $351.53 over the course of 65.428571 weeks for a total of $23,000.11.  (See Calculations Summ.)[12/13/]

For the period of January 1, 2013 through December 30, 2013, Guomin's monthly compensation increased to $1,200 per month (see page 4 above), and Guomin's Wage Received Per Week thus increased to $276.92 (($1,200 x 12) / 52).  With minimum wage remaining the same, the difference between Guomin's actual and earned pay ($605.38 - $276.92) results in a weekly underpayment of $328.46 over the course of 52 weeks for a total of $17,079.92.  (See Calculations

---

[9/]   183 days passed from December 31, 2014 to February 28, 2015 and from April 17, 2015 to August 17, 2015, or 26.142857 weeks.

[10/]   Plaintiffs' counsel calculated this period to be 27 weeks for a total of $12,872.93.

[11/]   Plaintiffs' counsel calculated total unpaid minimum and overtime wages to be $65,578.54.

[12/]   458 days passed from October 1, 2011 to December 31, 2012, or 65.428571 weeks.

[13/]   Counsel calculated this period to be 51 weeks for a total of $17,926.84.

14

Summ.)[14]/

For the period of December 31, 2013 to June 30, 2014, the state minimum wage rose to $8.00 per hour (see page 9 above), entitling Guomin to $668 per week (($8.00 x 40 hours per week) + ($12.00 x 29 hours per week)) for minimum and overtime wages. The difference between Guomin's actual and earned pay ($668 - $276.92) results in a weekly underpayment of $391.08 over the course of 26 weeks for a total of $10,168.08. (See Calculations Summ.)[15]/

For the period of July 1, 2014 through December 30, 2014, Guomin's Wage Received Per Week increased to $323.08 (($1,400 x 12) / 52). With minimum wage remaining the same, the difference between Guomin's actual and earned pay ($668 - $323.08) results in a weekly underpayment of $344.92 over the course of 26.142857 weeks for a total of $9,017.19. (See Calculations Summ.)[16][17]/

For the periods of December 31, 2014 to April 7, 2015 and May 19, 2015 to July 5, 2015, the state minimum wage rose to $8.75 per hour (see page 9 above), entitling Guomin to $730.63 per week (($8.75 x 40 hours per week) + ($13.125 x 29 hours per week)) for minimum and overtime wages. The difference between Guomin's actual and earned pay ($730.63 - $323.08) results in a weekly underpayment of $407.55 over the course of 20.857142 weeks for a total of

---

[14]/     364 days passed from January 1, 2013 to December 30, 2013, or 52 weeks.

[15]/     182 days passed from December 31, 2013 to June 30, 2014, or 26 weeks.

[16]/     183 days passed from July 1, 2014 to December 30, 2014, or 26.142857 weeks.

[17]/     Plaintiffs' counsel calculated this period to be 26 weeks for a total of $8,968.

$8,500.33.  (See Calculations Summ.)[18/][19/]

Thus, defendants owe Guomin Li a total of $67,765.63 in unpaid minimum and overtime wages.[20/]

### c.    Jian Li

For the period of September 15, 2013 through December 30, 2013, plaintiff Jian Li was entitled to $605.38 per week (($7.25 x 40 hours per week) + ($10.875 x 29 hours per week)) for minimum and overtime wages.  (See Dkt. No. 53: Yan Aff. Ex. L: Calculations Summ.)  Jian received $900 in monthly wages from September 15, 2013 to January 31, 2014.  (See page 5 above.)  Jian's Wage Received Per Week was $207.69 (($900 x 12) / 52).  The difference between Jian's actual and earned pay ($605.38 - $207.69) results in a weekly underpayment of $397.69 over the course of 15.285714 weeks for a total of $6,078.98.  (See Calculations Summ.)[21/]

For the period of December 31, 2013 to January 31, 2014, the state minimum wage rose to $8.00 per hour (see page 9 above), entitling Jian to $668 per week (($8.00 x 40 hours per week) + ($12.00 x 29 hours per week)) for minimum and overtime wages.  The difference between Jian's actual and earned pay ($668 - $207.69) results in a weekly underpayment of $460.31 over the course of 4.571428 weeks for a total of $2,104.27.  (See Calculations Summ.)[22/][23/]

---

[18/]    146 days passed from December 31, 2014 to April 7, 2015 and from May 19, 2015 to July 5, 2015, or 20.857142 weeks.

[19/]    Plaintiffs' counsel calculated this period to be 20.57 weeks for a total of $8,383.27.

[20/]    Plaintiffs' counsel calculated total unpaid minium and overtime wages to be $67,497.23.

[21/]    107 days passed from September 15, 2013 to December 30, 2013, or 15.258714 weeks.

[22/]    32 days passed from December 31, 2013 to January 31, 2014, or 4.571428 weeks.

[23/]    Plaintiffs' counsel calculated this period to be 4.43 weeks for a total of $2,038.51.

For the periods of February 1, 2014 through August 9, 2014 and September 7, 2014 through December 30, 2014, Jian's monthly compensation increased to $1,000 per month (see page 5 above), and Jian's Wage Received Per Week increased to $230.77 (($1,000 x 12) / 52).  With minimum wage remaining the same, the difference between Jian's actual and earned pay ($668 - $230.77) results in a weekly underpayment of $437.23 over the course of 43.571429 weeks for a total of $19,050.74.  (See Calculations Summ.)[24/][25/]

Jian also worked on December 31, 2014, when the state minimum wage rose to $8.75 per hour.  (See page 9 above.)  Plaintiffs' counsel did not seek any damages for this day (see Calculations Summ.), and the Court thus will not award any either.

Thus, defendants owe Jian Li a total of $27,233.99 in unpaid minimum and overtime wages.[26/]

**d.    Yuxiang Wang**

For the period of June 10, 2012 through September 15, 2012, plaintiff Yuxiang Wang was entitled to $610.81 per week (($7.25 x 40 hours per week) + ($10.875 x 29.5 hours per week)) for minimum and overtime wages under the NYLL.  (See Dkt. No. 53: Yan Aff. Ex. L: Calculations Summ.)  Wang received $850 in monthly wages from June 10, 2012 to September 15, 2012.  (See page 5 above.)  Wang's Wage Received Per Week was $196.15 (($850 x 12) / 52).  The difference between Wang's actual and earned pay ($610.81 - $196.15) results in a weekly underpayment of

---

[24/]    305 days passed from February 1, 2014 to August 9, 2014 and from  September 7, 2014 to December 30, 2014, or 43.571429 weeks.

[25/]    Plaintiffs' counsel calculated this period to be 43.71 weeks for a total of $19,113.23.

[26/]    Plaintiffs' counsel calculated total unpaid minimum and overtime wages to be $27,230.60.

$414.66 over the course of 14 weeks for a total of $5,805.24. (See Calculations Summ.)[27/]

For the period of February 3, 2013 through December 30, 2013, Wang's compensation increased to $900 per month (see page 5 above), and Wang's Wage Received Per Week thus increased to $207.69 (($900 x 12) / 52). With the minimum wage remaining the same, the difference between Wang's actual and earned pay ($610.81 - $207.69) results in a weekly underpayment of $403.12 over the course of 47.285714 weeks for a total of $19,061.82. (See Calculations Summ.)[28/29/]

For the period of December 31, 2013 through December 30, 2014, the state minimum wage rose to $8.00 per hour (see page 9 above), entitling Wang to $674 per week (($8.00 x 40 hours per week) + ($12.00 x 29.5 hours per week)) for minimum and overtime wages. From January 1, 2014 to December 31, 2014, Wang's compensation increased to $1,000 per month (see page 5 above), thus raising his Wage Received Per Week to $230.77 (($1,000 x 12) / 52). The difference between Wang's actual and earned pay ($674 - $230.77) resulted in a weekly underpayment of $443.23 over the course of 52 weeks for a total of $23,047.96. (See Calculations Summ.)[30/]

For the periods of December 31, 2014 through April 5, 2015 and June 11, 2015 through August 15, 2015, the state minimum wage rose to $8.75 per hour (see page 9 above), entitling Wang to $737.19 per week (($8.75 x 40 hours per week) + ($13.125 x 29.5 hours per week)) for minimum and overtime wages. From January 1, 2015 to August 15, 2015, Wang's

---

[27/]   98 days passed from June 10, 2012 to September 15, 2012, or 14 weeks.

[28/]   331 days passed from February 3, 2013 to December 30, 2013, or 47.285714 weeks.

[29/]   Plaintiffs' counsel calculated this period to be 47.43 weeks for a total of $19,119.41.

[30/]   365 days passed from December 31, 2013 to December 30, 2014, or 52 weeks.

compensation increased to $1,100 per month (see page 5 above), thus raising his Wage Received Per Week to $253.85 (($1,100 x 12) / 52).  The difference between Wang's actual and earned pay ($737.19 - $253.85) results in a weekly underpayment of $483.34 over the course of 23.142857 weeks for a total of $11,185.87.  (See Calculations Summ.)[31]/[32]/

Thus, defendants owe Yuxiang Wang a total of $59,100.89 in unpaid minimum and overtime wages.[33]/

### e.    Min Zhang

For the period of September 1, 2014 through December 30, 2014, plaintiff Min Zhang was entitled to $674 per week (($8.00 x 40 hours per week) + ($12.00 x 29.5 hours per week)) for minimum and overtime wages.  (See Dkt. No. 53: Yan Aff. Ex. L: Calculations Summ.)  Zhang received $1,000 per month from May 1, 2014 to August 8, 2015 (see page 6 above), resulting in a Wage Received Per Week of $230.77 (($1,000 x 12) / 52).  The difference between Zhang's actual and earned pay ($674 - $230.77) results in a weekly underpayment of $443.23 over the course of 34.857142 weeks for a total of $15,449.73. (See Calculations Summ.)[34]/[35]/

For the period of December 31, 2014 through August 28, 2015, the state minimum wage rose to $8.75 per hour (see page 9 above), entitling Zhang to $737.19 per week (($8.75 x 40 hours per week) + ($13.125 x 29.5 hours per week)) for minimum and overtime wages.  The

---

[31]/    162 days passed from December 31, 2014 to April 5, 2015 and June 11, 2015 to August 15, 2015, or 23.142857 weeks.

[32]/    Plaintiffs' counsel calculated this period to be 23 weeks for a total of $11,116.80.

[33]/    Plaintiffs' counsel calculated total unpaid minimum and overtime wages to be $59,089.45.

[34]/    244 days passed from May 1, 2014 to December 30, 2014, or 34.857142 weeks.

[35]/    Plaintiffs' counsel calculated this period to be 35 weeks for a total of $15,513.08.

difference between Zhang's actual and earned pay ($737.19 - $230.77) resulted in a weekly underpayment of $506.42 over the course of 34.428571 weeks for a total of $17,435.32.   (See Calculations Summ.)[36]

> Thus, defendants owe Min Zhang a total of $32,885.05 in unpaid minimum and overtime wages.[37]

## C.   **Spread of Hours Pay**

> Under New York law, "an employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required [by New York's minimum wage law], for any day in which . . . the spread of hours exceeds 10 hours." 12 N.Y.C.R.R. § 142-2.4.  Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." 12 N.Y.C.R.R. § 142-2.18.  Plaintiffs are entitled to spread of hours pay for the entire employment period at issue.[38]

---

[36]   241 days passed from December 31, 2014 to August 28, 2015, or 34.428571 weeks.

[37]   Plaintiffs' counsel calculated total unpaid minimum and overtime wages to be $32,948.33.

[38]   Most courts in this Circuit have ruled that the spread of hours provision generally applies only to employees earning minimum wage.  See, e.g., Baltierra v. Advantage Pest Control Co., 14 Civ. 5917, 2015 WL 5474093 at *6-7 (S.D.N.Y. Sept. 18, 2015) (Peck, M.J.); Pinovi v. FDD Enters., Inc., 13 Civ. 2800, 2015 WL 4126872 at *5 (S.D.N.Y. July 8, 2015) ("[R]ecent case law has been nearly unanimous that the spread-of-hours requirement extends only to workers paid at the minimum wage level." (quotations omitted)); Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *6 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); Zubair v. EnTech Eng'g P.C., 808 F. Supp. 2d 592, 601 (S.D.N.Y. 2011) (New York's spread of hours provision "is properly limited to those employees who receive only the minimum compensation required by law"); Franklin v. Breton Int'l, Inc., 06 Civ. 4877, 2006 WL 3591949 at *4 (S.D.N.Y. Dec. 11, 2006) ("The 'spread of hours' provision in the New York regulations requires an additional hour's pay at the 'basic minimum hourly wage rate' for any (continued...)

To determine plaintiffs' unpaid spread of hours wages, plaintiffs' counsel multiplied the number of work weeks in each period by the statutory minimum wage and the number of days in each week that plaintiffs worked in excess of ten hours.  (Dkt. No. 53: Yan Aff. Ex. L: Calculations Summ.)  The Court agrees with plaintiffs' counsel's methodology.

### a.    Changxing Li

Changxing Li is entitled to $3,883.93 in spread of hours wages for April 15, 2012 through December 30, 2013 (89.285714 weeks x $7.25 x 6 days); $2,194.29 for December 31, 2013 through December 30, 2014 (45.714286 weeks x $8.00 x 6 days); and $1,372.50 for December 31, 2014 through August 17, 2015 (26.142857 weeks x $8.75 x 6 days).[39]  The Court finds that Changxing Li is owed $7,450.72 in spread of hours wages.

### b.    Guomin Li

Guomin Li is entitled to $5,108.14 in spread of hours wages for October 1, 2011 through December 30, 2013 (117.428571 weeks x $7.25 x 6 days); $2,502.86 for December 31, 2013 through December 30, 2014 (52.142857 weeks x $8.00 x 6 days); and $1,095 for December 31, 2014 through July 5, 2015 (20.857142 weeks x $8.75 x 6 days).  The Court finds that Guomin Li is owed $8,706 in spread of hours wages.

---

[38]    (...continued)
day where the spread of hours in a day exceeds ten hours.  The provision, however, applies only to workers earning the minimum wage." (citation omitted)); Chan v. Triple 8 Palace, Inc., 03 Civ. 6048, 2006 WL 851749 at *21 (S.D.N.Y. Mar. 30, 2006) (Lynch, D.J.) ("The plain text of § [142-2.4] ensures an additional wage only 'in addition to the minimum wage' required under New York law (emphasis added).  It is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate.").  Because plaintiffs were paid below the minimum wage, they are entitled to spread of hours wages for the entire NYLL limitations period.

[39]    Changxing Li was on vacation from March 3, 2014 to April 6, 2014, and March 1, 2015 to April 16, 2015.

### c.    Jian Li

Jian Li is entitled to $664.93 in spread of hours wages for September 15, 2013 through December 30, 2013 (15.285714 weeks x $7.25 x 6 days); and $2,310.86 for December 31, 2013 through December 30, 2014 (48.142857 weeks x $8.00 x 6 days).  The Court finds that Jian Li is owed $2,975.79 in spread of hours wages.

### d.    Yuxiang Wang

Yuxian Wang is entitled to $2,221.61 in spread of hours wages for June 1, 2012 through December 30, 2013 (61.285714 weeks x $7.25 x 5 days); $2,080 for December 31, 2013 through December 30, 2014 (52 weeks x $8.00 x 5 days); and $1,012.50 for December 31, 2014 through August 15, 2015 (23.142857 weeks x $8.75 x 5 days).  The Court finds that Yuxiang Wang is owed $5,314.11 in spread of hours wages.

### e.    Min Zhang

Min Zhang is entitled to $1,394.29 in spread of hours wages for June 1, 2014 through December 30, 2014 (34.857142 weeks x $8.00 x 5 days); and $1,506.25 for December 31, 2014 through August 28, 2015 (34.428571weeks x $8.75 x 5 days).  The Court finds that Min Zhang is owed $2,900.54 in spread of hours wages.

### D.    Costs to Purchase and Maintain Trade Tools (Bicycles)

Plaintiffs seek reimbursement for the purchase and maintenance of electric bicycles that they used to make deliveries while employed at Iron Sushi.  (Dkt. No. 29: Am. Compl. ¶¶ 128-35; see also Dkt. No. 53: Yan Aff Ex. L: Calculations Summ.)  "Vehicles such as bicycles . . . are considered 'tools of the trade' if employees are required to possess and utilize them in the course of their employment." Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010); see, e.g., Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 257-58 (S.D.N.Y. 2008). "The

FLSA prohibits employers from requiring employees to purchase the tools of their trade . . . 'when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.'" Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 08 Civ. 3725, 2010 WL 4159391 at *4 (S.D.N.Y. Sept. 30, 2010) (Chin, D.J.) (quoting 29 C.F.R. § 531.35).[40/] Likewise, under New York law, "[i]f an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage."  12 N.Y.C.R.R. § 146-2.7.

Plaintiffs state that they were required to purchase electric bicycles to deliver food. (Am. Compl. ¶ 131; see also pages 4-6 above.) Plaintiffs purchased their electric bicycles for $1,400 each, and spent at least $650 per year on bicycle maintenance.  (See pages 3-6 above.)  Plaintiffs seek damages of $1,000 per year, or $19.23 per week.  (See Dkt. No. 53: Yan Aff. Ex. L: Calculations Summ.)  Because plaintiffs have failed to produce any invoices or other proof of such purchases,[41/] however, the Court finds plaintiffs' claim for $1,000 per year to be excessive and reduces the amount to (1) $1,000 per plaintiff and (2) $10 per week for repairs.  See, e.g., Zhen Ming Chen v. New Fresco Tortillas Taco LLC, 15 Civ. 2158, 2015 WL 5710320 at *4 (S.D.N.Y. Sep. 25, 2015) (Peck, M.J.) (Because plaintiff had no supporting documentation, Court reduced NYLL damages for bicycle purchase from $1,500 to $1,000 and found $40 per month a reasonable cost for bicycle repairs); Maldonado v. La Nueva Rampa, Inc., 10 Civ. 8195, 2012 WL 1669341 at

---

[40/]   See also 29 C.F.R. § 531.35 ("[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the" FLSA).

[41/]   The Court warned plaintiffs' counsel that "[t]o recover for bicycle-related costs, plaintiffs must provide invoices or other proof of such purchases."  (Dkt. No. 25: 8/9/16 Order.)

*8 (S.D.N.Y. May 14, 2012) ($500 dollars per year a reasonable cost for bicycle repairs); Jin M. Cao

v. Wu Liang Ye Lexington Rest. Inc., 2010 WL 4159391 at *5 (reducing damages for bicycle

purchase and expenses from claimed amount of $1,500 to $500 per year).

Since the Court has determined that plaintiffs' hourly wages are below New York's

statutory minimum wage, plaintiffs are entitled to recover damages for the reimbursement of these

costs in the following amounts: $2,611.43 for Changxing Li ((161.142857 weeks x $10) + $1,000),

$2,904.29 for Guomin Li ((190.428571 weeks x $10) + $1,000), $1,634.29 for Jian Li ((63.428571

weeks x $10) + $1,000), $2,364.29 for Yuxiang Wang ((136.428571 weeks x $10) + $1,000), and

$1,692.86 for Min Zhang ((69.285713 weeks x $10) + $1,000).

### E.    Statutory Damages for Wage Notice and Record Keeping Violations

Plaintiffs seek to recover damages for defendants' failure to provide regular wage

statements and annual wage notices as required by New York's Wage Theft Prevention Act

("WTPA"), an amendment to the NYLL effective April 9, 2011.  (Dkt. No. 29: Am. Compl. ¶¶

121-27; Dkt. No. 53: Yan Aff. Ex. L: Calculations Summ.)  The WTPA requires employers to

> furnish each employee with a statement with every payment of wages, listing the
> following: the dates of work covered by that payment of wages; name of employee;
> name of employer; address and phone number of employer; rate or rates of pay and
> basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission,
> or other; gross wages; deductions; allowances, if any, claimed as part of the
> minimum wage; and net wages. . . .  [T]he statement shall include the regular hourly
> rate or rates of pay; the overtime rate or rates of pay; the number of regular hours
> worked, and the number of overtime hours worked.

N.Y. Labor Law § 195(3).  The WTPA does not apply retroactively, and thus prior to April 9, 2011,

defendants were not obliged to provide plaintiffs with wage statements.  See, e.g., Andrade v. 168

First Ave Rest. Ltd., 14 Civ. 8268, 2016 WL 3141567 at *8-9 (S.D.N.Y. June 3, 2016) (Peck, M.J.),

R. & R. adopted, 2016 WL 3948101 (S.D.N.Y. July 19, 2016); Haas v. Verizon N.Y., Inc., 13 Civ.

8130, 2015 WL 4884858 at *25 (S.D.N.Y. Aug. 13, 2015), R. & R. adopted in relevant part, 2015

WL 5785023 (S.D.N.Y. Sept. 30, 2015); Inclan v. N.Y. Hospitality Grp., Inc., 95 F. Supp. 3d 490,

501 (S.D.N.Y. 2015).  Prior to February 27, 2015, the WTPA entitled employees to recover statutory

damages for violations of the wage statement requirement of $100 per work week, not to exceed

$2,500.  See 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1-d).  As of February

27, 2015, the WTPA increased these penalties to $250 per work day, not to exceed $5,000.  N.Y.

Labor Law § 198(1-d).

Plaintiffs never were given any payment statements throughout their employment.

(See pages 3-6 above.)  Thus, Changxing Li, Guomin Li, Yuxiang Wang, and Min Zhang are

entitled to statutory damages at the maximum amount of $5,000.[42]  Because Jian Li's employment

concluded prior to the February 27, 2015 amendment, he is entitled only to statutory damages in the

amount of $2,500.[43]  (Yan Aff. Ex. L: Calculations Summ.)

Plaintiffs also were never provided with annual wage notices.  (See pages 3-6 above.)

The WTPA requires that at the time of hiring, employers furnish each employee

> in writing in English and in the language identified by each employee as the primary
> language of such employee, at the time of hiring, a notice containing the following
> information: the rate or rates of pay and basis thereof, whether paid by the hour,
> shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as
> part of the minimum wage, including tip, meal, or lodging allowances; the regular
> pay day designated by the employer in accordance with section one hundred
> ninety-one of this article; the name of the employer; any "doing business as" names
> used by the employer; the physical address of the employer's main office or principal
> place of business, and a mailing address if different; the telephone number of the
> employer; plus such other information as the commissioner deems material and
> necessary.

---

[42]   Changxing Li, Guomin Li, Yuxiang Wang, and Min Zhang all worked more than 20 days
after February 27, 2015.

[43]   Jian Li worked more than 25 weeks between April 9, 2011 and February 27, 2015.

N.Y. Labor Law § 195(1)(a).  Prior to December 29, 2014, employers were required to provide wage notices "on or before February first of each subsequent year of the employee's employment with the employer."  Andrade v. 168 First Ave Rest. Ltd., 2016 WL 3141567 at *8-9 (quoting N.Y. Labor Law § 195(1)(a) (eff. April 9, 2011 to Dec. 28, 2014)); see, e.g., Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 475 n.34 (S.D.N.Y. Aug. 12, 2015).  Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for annual wage notice violations of $50 per work week, not to exceed $2,500.  See 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1-b).  As of February 27, 2015, these penalties increased to $50 per work day, not to exceed $5,000.  N.Y. Labor Law § 198(1-b).  Accordingly, Changxing Li, Guomin Li, Yuxiang Wang, and Min Zhang are entitled to statutory damages at the maximum amount of $5,000.[44]  Because Jian Li's employment concluded prior to February 27, 2015, he is entitled to statutory damages in the amount of $2,500.[45]  (Yan Aff. Ex. L: Calculations Summ.)

In total, for wage statement and notice violations, plaintiffs' damages are as follows: $10,000 for Changxing Li, $10,000 for Guomin Li, $10,000 Yuxiang Wang, $10,000 for Min Zhang and $5,000 for Jian Li.

## F.    **Liquidated Damages**

Plaintiffs seek double liquidated damages—i.e., liquidated damages under both the FLSA and the NYLL for the same periods.  (Dkt. No. 52: Pls. Br. at 24-25.)

Under the FLSA, a plaintiff is entitled to 100% of unpaid wages as liquidated

---

[44]  Changxing Li, Guomin Li, and Yuxiang Wang each worked more than 50 weeks between April 9, 2011 and February 27, 2015 and worked more than 50 days after February 27, 2015. Min Zhang worked more than 100 days after February 27, 2015.

[45]  Jian Li worked more than 50 weeks between April 9, 2011 and February 27, 2015.

damages.  29 U.S.C. § 216(b); see, e.g., Alvarez v. 215 N. Ave. Corp., 13 Civ. 7049, 2015 WL

3855285 at *1 (S.D.N.Y. June 19, 2015); Marfak v. Peretta, 10 Civ. 7785, 2011 WL 1758625 at *1

(S.D.N.Y. May 6, 2011) ("The FLSA imposes the obligation to pay unpaid overtime compensation

and 'an additional equal amount as liquidated damages' on employers who violate its requirement

that overtime wages be paid." (quoting 29 U.S.C. § 216(b))); Alejo v. Darna Rest., 09 Civ. 5436,

2010 WL 5249383 at *6 (S.D.N.Y. Dec. 17, 2010) (Peck, M.J.), R. & R. adopted as modified, 2011

WL 165413 (S.D.N.Y. Jan. 18, 2011).[46/]

          In addition to federal liquidated damages, plaintiffs also seek state liquidated

damages for their unpaid wages.  (See page 3 above.)  On December 10, 2010, the New York

legislature amended New York Labor Law §§ 198(1–a) and 663(1) to incorporate the federal

standard, increasing the amount of available liquidated damages from 25% to 100%, effective April

9, 2011.  2010 N.Y. Sess. Laws ch. 564 §§ 1, 3; N.Y. Labor Law §§ 198(1–a), 663(1).

          The Court declines to award plaintiffs double liquidated damages.

          The Second Circuit recently held in an "unpublished" summary decision that "the

NYLL and FLSA liquidated damages provisions are identical in all material respects, serve the same

functions, and redress the same injuries.  In the absence of any indication otherwise, we interpret

the New York statute's provision for liquidated damages as satisfied by a similar award of liquidated

---

[46/]    See also, e.g., Vasquez v. Ranieri Cheese Corp., No. 07-CV-464, 2010 WL 1223606 at *18
(E.D.N.Y. Mar. 26, 2010) ("FLSA entitles an employee to recover an amount equal to the
unpaid wages (i.e., an additional 100% of the unpaid wages awarded) in the form of
liquidated damages."); Dong v. CCW Fashion Inc., 06 Civ. 4973, 07 Civ. 9741, 2009 WL
884680 at *4 (S.D.N.Y. Feb. 19, 2009) ("The FLSA allows for an additional 100% of the
amount owed for minimum wage and/or overtime violations, which means that those
amounts are doubled."), R. & R. adopted, 2009 WL 884668 (S.D.N.Y. Apr. 1, 2009); Ting
Yao Lin v. Hayashi Ya II, Inc., 08 Civ. 6071, 2009 WL 289653 at *7 (S.D.N.Y. Jan. 30,
2009) (Peck, M.J.), R. & R. adopted, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009).

damages under the federal statute."  Chowdhury v. Hamza Express Food Corp., No. 15-3142-CV, 2016 WL 7131854 at *2 (2d Cir. Dec. 7, 2016).

Even before Chowdhury, "an increasing number of FLSA cases"–especially since the NYLL was amended to provide 100% liquidated damages–have ruled that a plaintiff is not entitled to both federal and state liquidated damages because they serve the same practical purposes in compensating the plaintiff and deterring wage violations.  Yun Hong Hua v. Eight Star Inc., No. 15 CIV. 0275, 2015 WL 2354322 at *4 (E.D.N.Y. May 15, 2015) (collecting cases) ("[T]he use of the FLSA and state law to award double liquidated damages is effectively a judge-created treble damage remedy that neither legislature, Congress or New York, has envisioned."); see also, e.g., Quiroz v. Luigi's Dolceria, Inc., No. 14-CV-871, 2016 WL 2869780 at *6 (E.D.N.Y. May 17, 2016) ("[T]he recent trend has moved away from awarding liquidated damages under both the FLSA and the NYLL, and instead making a single award under the statute that provides the greater recovery. Continuing to follow that trend, I decline to provide cumulative liquidated damages under both statutes." (citing cases)); Lopez v. Ploy Dee, Inc., 15 Civ. 647, 2016 WL 1626631 at *2 n.1 (S.D.N.Y. Apr. 21, 2016) ("there is persuasive authority in this circuit holding that FLSA plaintiffs cannot 'double recover' liquidated damages under both" the FLSA and the NYLL); Hengjin Sun v. China 1221, Inc., 12 Civ. 7135, 2016 WL 1587242 at *4 (S.D.N.Y. Apr. 19, 2016) ("NYLL's recent amendments 'have undermined the basis,' such as it was, for distinguishing between FLSA's and NYLL's liquidated damages provisions.  In the absence of appellate authority on the subject, the Court joins the emerging jurisprudential trend and finds that an employee may not recover cumulative liquidated damages under both the FLSA and NYLL for overlapping claims after November 24, 2009." (citations omitted)); Banegas v. Mirador Corp., 14 Civ. 8491, 2016 WL 1451550 at *2 n.2 (S.D.N.Y. Apr. 12, 2016); Castillo v. RV Transp., Inc., 15 Civ. 0527, 2016 WL

1417848 at *3 (S.D.N.Y. Apr. 11, 2016); Chen v. JP Standard Constr. Corp., No. 14-CV-1086, 2016

WL 2909966 at *12-13 (E.D.N.Y. Mar. 18, 2016), R. & R. adopted, 2016 WL 2758272 (E.D.N.Y.

May 12, 2016); Perez v. Queens Boro Yang Cleaner, Inc., No. 14-CV-7310, 2016 WL 1359218 at

*6 (E.D.N.Y. Mar. 17, 2016), R. & R. adopted, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016); Jeong

Woo Kim v. 511 E. 5th St., LLC, 133 F. Supp. 3d 654, 667 (S.D.N.Y. 2015) ("The Plaintiffs seek

to recover liquidated damages under both statutes.  Prior to the change in the [New York Labor] law,

many courts permitted such recoveries, reasoning that the liquidated damages provisions of the

FLSA and NYLL served different purposes.  As Judge Buchwald has explained [in Inclan v. N.Y.

Hospitality Grp., Inc.], however, such double recoveries should no longer be permitted."); Zhen

Ming Chen v. New Fresco Tortillas Taco LLC, 15 Civ. 2158, 2015 WL 5710320 at *9 (S.D.N.Y.

Sept. 25, 2015) (Peck, M.J.); Bosoro v. Am. Comprehensive Healthcare Med. Grp., P.C., No.

14-CV-1099, WL 5686481 at *7 (E.D.N.Y. Aug. 31, 2015), R. & R. adopted, 2015 WL 5686481

(E.D.N.Y. Sept. 25, 2015); Santana v. Brown, 14 Civ. 4279, 2015 WL 4865311 at *5 (S.D.N.Y.

Aug. 12, 2015); Garcia v. JonJon Deli Grocery Corp., 13 Civ. 8835, 2015 WL 4940107 at *6

(S.D.N.Y. Aug. 11, 2015); McGlone v. Contract Callers Inc., 114 F. Supp. 3d 172, 174 (S.D.N.Y.

2015); Olvera v. Los Taquitos Del Tio Inc., No. 15-CV-1262, 2015 WL 3650238 at *2 n.2

(E.D.N.Y. June 11, 2015).[47/]  The "prevailing view" now is that double liquidated damages should

---

[47/]      Accord, e.g., Inclan v. N.Y. Hospitality Grp., Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015)
(citing cases); Fu v. Pop Art Int'l, 10 Civ. 8562, 2011 WL 4552436 at *5 (S.D.N.Y. Sept. 19,
2011) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309
(S.D.N.Y. Dec. 7, 2011); Pineda-Herrera v. Da-Ar-Da, Inc., No. 09-CV-5140, 2011 WL
2133825 at *4-5 (E.D.N.Y. May 26, 2011) ("[B]oth forms of damages seek to deter
wage-and-hour violations.  Both do so in a manner calculated to compensate the party
harmed.  Because this Court finds no persuasive basis to distinguish the two forms of
damages, the Court will award the greater of the two where both forms of damages are
otherwise available for the same violations." (citations omitted)); Jin v. Pac. Buffet House,
                                                                              (continued...)

not be awarded.[48]

In keeping with the Second Circuit's <u>Chowdhury</u> decision, the "prevailing view" of district court decisions in this Circuit, as well as this Court's previous rulings that plaintiffs should not be awarded liquidated damages under both the FLSA and the NYLL for the same time period, plaintiffs are entitled to single liquidated damages at the state statutory rate of 100% on their minimum, overtime, and spread of hour wage claims.  Thus, plaintiffs are owed single liquidated

---

[47] (...continued)
Inc., No. CV-06-579, 2009 WL 2601995 at *9 (E.D.N.Y. Aug. 24, 2009) (rejecting double recovery because "[r]egardless of the purpose, the award under the FLSA is four times the award under state law, and thus is more than sufficient to satisfy any punitive purpose the state law is intended to serve"); <u>Chun Jie Yin</u> v. <u>Kim</u>, No. 07 CV 1236, 2008 WL 906736 at *7 (E.D.N.Y. Apr. 1, 2008) ("[T]o the extent the 'liquidated damages' available under the FLSA can properly be characterized as compensation, it is apparent that the 'liquidated damages' available under the state statute compensates the exact same harm-namely, the harm caused by the defendant's culpable state of mind.  As a result, it would be improper to award [plaintiff] both forms of compensation for the same harm."); <u>Pavia</u> v. <u>Around The Clock Grocery, Inc.</u>, No. 03 CV 6465, 2005 WL 4655383 at *8 n.13 (E.D.N.Y. Nov. 15, 2005) (New York Labor Law "provides for a payment of liquidated damages of 25% of all unpaid regular wages, including spread of hours wages.  As the Court has already recommended liquidated damages calculated under the FLSA for the unpaid minimum and overtime wages, [plaintiff] is only entitled to receive 25% of his spread of hours wages under state law").

[48] <u>Courts Shy Away From Treble Damages in Wage, Hour Suits</u>, N.Y. Law Journal, Feb. 29, 2016 ("Over the past several years, the courts have reversed course from the initial bevy of federal and state court decisions applying 200 percent liquidated damages.  Countless applications seeking 200 percent liquidated damages have since been denied by numerous judges who find such recoveries to be duplicative and unnecessary.  These courts continue to reason that '[b]oth forms of damages seek to deter wage-and-hour violations in a manner calculated to compensate the [plaintiff].'  Even judges that still apply <u>both</u> NYLL and FLSA liquidated damages together have noted the recent trend away from granting 200 percent liquidated damages.  In fact, in some instances judges have begun abrogating their own precedent, and now embrace the view that double liquidated damages under both the NYLL and FLSA are inappropriate given the similarities between both statutes.  Today, the prevailing view appears to be that applying liquidated damages remedies under both the NYLL and FLSA results in 'a windfall that neither the state nor the federal legislature appears explicitly to have intended.'").

damages in the following amounts: $70,431.75 for Changxing Li, $76,471.63 for Guomin Li, $30,209.78 for Jian Li, $64,415 for Yuxiang Wang, and $35,785.59 for Min Zhang.  (See pages 12-19, 20-21 above).

### G.    Prejudgment Interest

Plaintiffs seek prejudgment interest on their NYLL claims for unpaid minimum wages (Dkt. No. 29: Am. Compl. ¶ 101), unpaid overtime (id. ¶ 114), spread of hours (id. ¶ 119), and wage statement and wage notice violations (id. ¶ 125), at a rate of nine percent per annum calculated from the midpoint of their employment.  (See Dkt. No. 53: Yan Aff. Ex. L: Calculations Summ.)[49]

The Second Circuit has held that even where a plaintiff is awarded liquidated damages under the NYLL, prejudgment interest still is appropriate.  See, e.g., Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999), cert. denied, 528 U.S. 1119, 120 S. Ct. 940 (2000); Begum v. Ariba Disc., Inc., 12 Civ. 6620, 2015 WL 223780 at *3 (S.D.N.Y. Jan. 16, 2015); McLean v. Garage Mgmt. Corp., 09 Civ. 9325, 10 Civ. 3950, 2012 WL 1358739 at *10 (S.D.N.Y. Apr. 19, 2012) ("Because NYLL liquidated damages and prejudgment interest 'serve fundamentally

---

[49]    Interest is not awarded under the FLSA, as interest is assumed to be included under liquidated compensatory damages.  See, e.g., Brock v. Superior Care, Inc., 840 F.2d 1054, 1065 (2d Cir. 1988) ("It is well settled that in an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages."); Paz v. Piedra, 09 Civ. 3977, 2011 WL 121103 at *13 (S.D.N.Y. Jan. 12, 2012); Fu v. Pop Art Int'l Inc., 2011 WL 6092309 at *2.  For that reason, courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA.  See, e.g., Tackie v. Keff Enters. LLC, 14 Civ. 2074, 2014 WL 4626229 at *5 & n.5 (S.D.N.Y. Sept. 16, 2014) ("[P]laintiffs are entitled to prejudgment interest on any compensatory damages awarded under the NYLL for which there is no corresponding award of liquidated damages under FLSA."); Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 321-22 (S.D.N.Y. 2014).  Accordingly, plaintiffs are not entitled to prejudgment interest on their FLSA minimum or overtime wages.

different purposes', the Court of Appeals has observed that plaintiffs may recover both for the same unpaid wages."); Olvera v. New Ko-Sushi, 10 Civ. 4643, 2011 WL 724699 at *5 (S.D.N.Y. Feb. 16, 2011). This is because "'[p]re-judgment interest and liquidated damages under the [New York] Labor Law are not functional equivalents.'" Fu v. Pop Art Int'l, Inc., 10 Civ. 8562, 2011 WL 6092309 at *2 (S.D.N.Y. Dec. 7, 2011) (quoting Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d at 265).

The statutory interest rate in New York of nine percent, C.P.L.R. § 5004, is applicable to plaintiffs' NYLL unpaid minimum wage, overtime, spread of hours and wage statement and wage notice violation claims (that do not overlap with FLSA recovery). Nevertheless, plaintiffs' damages chart only seeks prejudgment interest on unpaid spread of hours wages and unpaid minimum and overtime wages prior to the FLSA's statute of limitations. (Ex. L: Calculations Summ.) The Court cannot, or at least will not, award plaintiffs more than they seek. Andrade v. 168 First Ave Rest. Ltd., 14 Civ. 8268, 2016 WL 3141567 at *10 (S.D.N.Y. June 3, 2016) (Peck, M.J.), R. & R. adopted, 2016 WL 3948101 (S.D.N.Y. July 19, 2016); accord, e.g., Zhen Ming Chen v. New Fresco Tortillas Taco LLC, 15 Civ. 2158, 2015 WL 5710320 at *8 (S.D.N.Y. Sept. 25, 2015) (Peck, M.J.). Accordingly, interest is applied only to plaintiffs' unpaid spread of hours wages and unpaid minimum and overtime wages prior to September 24, 2012.

Because these damages accrued at different times, interest is calculated pursuant to C.P.L.R. § 5001(b) ("Where . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.").[50]

---

[50]  Prejudgment interest applies only to the spread of hours compensatory damages and not also to the NYLL liquidated damages on those wages. See, e.g., Janus v. Regalis Constr., Inc., 11-CV-5788, 2012 WL 3878113 at *8 (E.D.N.Y. July 23, 2012), R. & R. adopted, 2012 WL (continued...)

### a.      Changxing Li

The midpoint between the date Changxing Li began work with defendants on April 15, 2012 and the first day of the FLSA limitations period on September 24, 2012 is July 5, 2012. (See page 3 above.)  1,707 days passed from July 5, 2012 to March 7, 2017, the date of this Report and Recommendation.  At a rate of nine percent simple interest per year on the total amount of $8,417.75,[51] defendants owe Changxing $3,550.56 in prejudgment interest on his unpaid minimum and overtime wages, plus continuing prejudgment interest through the date of judgment at a rate of $2.08 per day.[52]

The midpoint between April 15, 2012 and when Changxing Li ceased employment on August 17, 2015 is December 15, 2013.  1,179 days passed from December 15, 2013 to March 7, 2017.  At a rate of nine percent simple interest per year on the total amount of $7,450.72 (see page 20 above), defendants owe Changxing Li $2,169.36 in additional prejudgment interest for spread of hours wages, plus continuing prejudgment interest through the date of judgment at a rate of $1.84 per day.[53]

### b.      Guomin Li

The midpoint between the date Guomin Li began work with defendants on October

---

[50]      (...continued)
3877963 (Sept. 4, 2012); Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 1373118 at *10 (S.D.N.Y. May 8, 2007) (Lynch, D.J.).

[51]      The amounts in this section refer to NYLL wages earned prior to the FLSA limitations period and thus do not overlap with FLSA liquidated damages.

[52]      Nine percent of $8,417.45 equals $757.60 which, when divided by 365, results in an interest rate of $2.08 per day.

[53]      Nine percent of $7,450.72 equals $670.56 which, when divided by 365, results in an interest rate of $1.84 per day.

1, 2011 and the first day of the FLSA limitations period on September 24, 2012 is March 28, 2012. (See page 4 above.) 1,806 days passed from March 28, 2012 to March 7, 2017, the date of this Report and Recommendation. At a rate of nine percent simple interest per year on the total amount of $18,028.47, defendants owe Guomin Li $8,036.70 in prejudgment interest on his unpaid minimum and overtime wages, plus continuing prejudgment interest through the date of judgment at a rate of $4.45 per day.[54]

The midpoint between October 1, 2011 and when Guomin Li ceased employment on July 7, 2015 is August 18, 2013. 1,298 days passed from August 18, 2013 to March 7, 2017, the date of this Report and Recommendation. At a rate of nine percent simple interest per year on the total amount of $8,706 (see page 21 above), defendants owe Guomin Li $2,790.70 in additional prejudgment interest for spread of hours wages, plus continuing prejudgment interest through the date of judgment at a rate of $2.15 per day.[55]

      **c.**      **Jian Li**

The midpoint between the date Jian Li began work with defendants on September 15, 2013 and when he ceased employment on December 31, 2014 is May 9, 2014. (See page 4 above.) 1,034 days passed from May 9, 2014 to March 7, 2017, the date of this Report and Recommendation. At a rate of nine percent simple interest per year on the total amount of $2,975.79 (see page 21 above), defendants owe Jian Li $754.82 in prejudgment interest on his spread of hours wages, plus continuing prejudgment interest through the date of judgment at a rate of $0.73 per

---

[54]    Nine percent of $18,028.47 equals $1,622.56 which, when divided by 365, results in an interest rate of $4.45 per day.

[55]    Nine percent of $8,706 equals $783.54 which, when divided by 365, results in an interest rate of $2.15 per day.

day.[56]

### d.    **Yuxiang Wang**

The midpoint between the date Yuxiang Wang began work with defendants on June 20, 2012 and the first day of the FLSA limitations period on September 24, 2012 is August 7, 2012. (See page 5 above.)  1,674 days passed from August 7, 2012 to March 7, 2017, the date of this Report and Recommendation.  At a rate of nine percent simple interest per year on the total amount of $5,805.24, defendants owe Yuxiang Wang $2,393.82 in prejudgment interest on his unpaid minimum and overtime wages, plus continuing prejudgment interest through the date of judgment at a rate of $1.43 per day.[57]

The midpoint between June 20, 2012 and when Yuxiang Wang ceased employment on August 15, 2015 is January 16, 2014.  1,147 days passed from January 16, 2014 to March 7, 2017.  At a rate of nine percent simple interest per year on the total amount of $5,314.11 (see page 21 above), defendants owe Yuxiang Wang $1,502.57 in additional prejudgment interest for spread of hours wages, plus continuing prejudgment interest through the date of judgment at a rate of $1.31 per day.[58]

### e.    **Min Zhang**

The midpoint between the date Min Zhang began work with defendants on May 1, 2014 and when he ceased employment on August 28, 2015 is December 28, 2014.  (See page 6

---

[56]    Nine percent of $2,975.79 equals $267.82 which, when divided by 365, results in an interest rate of $0.73 per day.

[57]    Nine percent of $5,805.24 equals $522.47 which, when divided by 365, results in an interest rate of $1.43 per day.

[58]    Nine percent of $5,314.11 equals $478.27  which, when divided by 365, results in an interest rate of $1.31 per day.

above.)  801 days passed from December 28, 2014 to March 7, 2017, the date of this Report and Recommendation.  At a rate of nine percent simple interest per year on the total amount of $2,900.54 (see page 21 above), defendants owe Jian Li $576.72 in prejudgment interest on his spread of hours wages, plus continuing prejudgment interest through the date of judgment at a rate of $0.72 per day.[59]

## II.   **ATTORNEYS' FEES AND COSTS**

Under the FLSA and NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); N.Y. Labor Law § 663(1); accord, e.g., Young v. Cooper Cameron Corp., 586 F.3d 201, 208 (2d Cir. 2009) ("The FLSA provides that a court 'shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'"); Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008) ("In addition to providing for liquidated damages, the FLSA directs courts to award prevailing plaintiffs reasonable attorney's fees and costs."); Tate v. Levy Rest. Holdings, LLC, 150 F. Supp. 3d 245, 249 (E.D.N.Y. 2015); Echevarria v. Insight Med., P.C., 102 F. Supp. 3d 511, 514 (S.D.N.Y. 2015); Imbeault v. Rick's Cabaret Int'l Inc., 08 Civ. 5458, 2009 WL 2482134 at *1 (S.D.N.Y. Aug. 13, 2009) (Lynch, D.J.) ("Both the FLSA and the NYLL provide that a prevailing plaintiff may seek an award of reasonable attorneys' fees and costs, to be paid by the defendants.").[60]

---

[59]    Nine percent of $2,900.54 equals $261.05 which, when divided by 365, results in an interest rate of $0.72 per day.

[60]    See also, e.g., Garcia v. Jambox, Inc., 14 Civ. 3504, 2015 WL 2359502 at *2 (S.D.N.Y. Apr. 27, 2015) ("The FLSA and the NYLL grant prevailing plaintiffs their attorney's fees 'to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" (quoting Aguilera v.
(continued...)

### A.   Costs

Plaintiffs seek $660.90 in costs, including the $400 filing fee and $120 for service of process.  (Dkt. No. 53: Yan Aff. Ex. N.)  Counsel's request for costs is not supported by any documentation, just a list of expenditures.  (See Ex. N.)  The Court takes judicial notice of the Court filing fee of $400; in the absence of supporting documentation as to any further costs, only that $400 is recoverable.  E.g., Baltierra v. Advantage Pest Control Co., 14 Civ. 5917, 2015 WL 5474093 at *12 (S.D.N.Y. Sept. 18, 2015) (Peck, M.J.); Carrasco v. W. Village Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *7 (S.D.N.Y. July 11, 2012) (Peck, M.J.), R. & R. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012); Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *5 (S.D.N.Y. Sept. 19, 2011 ) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011).  Accordingly, plaintiffs should be awarded $400 in costs.

### B.   Attorneys' Fees

Plaintiffs request $32,232 in attorneys' fees for the work of David Yan, a solo practitioner.  (Dkt. No. 53: Yan Aff. ¶ 21 & Ex. M.)  Plaintiffs seek an hourly rate of $400 for Yan, who has been practicing law since 2004 and has handled more than twelve wage and hour cases. (Yan Aff. ¶¶ 21-22.)

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called

---

60/     (...continued)
Cookie Panache, 13 Civ. 6071, 2014 WL 2115143 at *2 (S.D.N.Y. May 20, 2014)));
Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011) (Peck, M.J.)
("Under the FLSA and N.Y. Labor Law, a prevailing plaintiff is entitled to reasonable
attorneys' fees and costs."); Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d
470, 473 (S.D.N.Y. 2009) ("In an action pursuant to the FLSA, a 'prevailing party' must be
awarded reasonable attorneys' fees and costs . . . .  Likewise, the NYLL requires that '[i]n
any action . . . in which the employee prevails, the court shall allow such employee
reasonable attorney's fees . . . .'" (citations omitted)).

lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).[61/]  Particularly in awarding statutory attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward . . . ."  Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008) ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations."); Lane Crawford LLC v. Kelex Trading (CA) Inc., 12 Civ. 9190, 2013 WL 6481354 at *6 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.), R. & R. adopted, 12 Civ. 9190, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014).

In April 2010, the Supreme Court revisited the issue of attorneys' fees and approved of the "lodestar" approach over the more discretionary approach of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), holding:

> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable, and unlike the Johnson approach, the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

---

[61/]   The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees.  E.g., N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

III

Our prior decisions concerning the federal fee-shifting statutes have established six important rules that lead to our decision in this case.

First, a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. . . .

Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective.  Indeed, we have said that the presumption is a "strong" one.

Third, although we have never sustained an enhancement of a lodestar amount for performance, we have repeatedly said that enhancements may be awarded in "'rare'" and "'exceptional'" circumstances.

Fourth, we have noted that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation.  We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors "presumably [are] fully reflected in the number of billable hours recorded by counsel."  We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."

Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant.

Finally, a fee applicant seeking an enhancement must produce "specific evidence" that supports the award.  This requirement is essential if the lodestar method is to realize one of its chief virtues, i.e., providing a calculation that is objective and capable of being reviewed on appeal.

Perdue v. Kenny A., 559 U.S. 542, 551-53, 130 S. Ct. 1662, 1672-73 (2010) (citations omitted).[62]

---

[62]   Although the Supreme Court's Perdue opinion appeared to cast doubt on the viability of the Second Circuit's 2008 opinion in Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d at 190, which relied on, among other factors, the Johnson factors, Arbor Hill remains the standard in this Circuit.  See, e.g., Hui Luo v. L & S Acupuncture, P.C., No. 15-1892-CV, 2016 WL 2848646 at *2 (2d Cir. May 16, 2016); Gortat v. Capala Bros., Inc., 621 F. App'x 19, 22 (2d Cir. 2015) (reviewing attorneys' fee award under Arbor Hill and Johnson factors); K.L. v. Warwick Valley Cent. Sch. Dist., 584 F. App'x 17, 18 (2d Cir. 2014) ("In determining an appropriate hourly rate, 'the district court should consider, among
(continued...)

As the fee applicants, plaintiffs "bear the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." General Elec. Co. v. Compagnie Euralair, S.A., 96 Civ. 0884, 1997 WL 397627 at *4 (S.D.N.Y. July 3, 1997) (Scheindlin, D.J. & Peck, M.J.).[63/]

## 1.   Reasonable Hourly Rate

"Courts in this District have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450." Gurung v. Malhotra, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012); see, e.g., Long v. HSBC USA Inc., 14 Civ. 6233, 2016 WL 4764939 at *10 (S.D.N.Y. Sept. 13, 2016) ("Although courts in this district have occasionally awarded hourly rates of $550 and $600 to experienced senior litigators, FLSA litigators are rarely awarded over $450 per hour."); Xochimitl v. Pita Grill of Hell's Kitchen, Inc, 14 Civ. 10234, 2016 WL 4704917 at *20 (S.D.N.Y. Sept. 8, 2016); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011) (Peck, M.J.) (approving partner's $450 hourly rate as "consistent

---

[62/]     (...continued)
others, the Johnson factors.'" (quoting Arbor Hill)); Torres v. Gristede's Operating Corp., 519 F. App'x 1, 3-4 (2d Cir. 2013).  In any event, the result would not differ here under either approach.

[63/]     Accord, e.g., Charles v. City of N.Y., 13 Civ. 3547, 2014 WL 4384155 at *3 (S.D.N.Y. Sept. 4, 2014); Boutros v. JTC Painting & Decorating Corp., 12 Civ. 7576, 2014 WL 3925281 at *4 (S.D.N.Y. Aug. 8, 2014); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (Peck, M.J.); N.Y. City Dist. Council of Carpenters v. Rock-It Contracting, Inc., 09 Civ. 9479, 2010 WL 1140720 at *2 (S.D.N.Y. Mar. 26, 2010) (Peck, M.J.), R. & R. adopted, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010); Cablevision Sys. N.Y.C. Corp. v. Torres, 02 Civ. 7602, 2003 WL 22078938 at *5 (S.D.N.Y. Sept. 9, 2003) (Peck, M.J.); Sowemimo v. D.A.O.R. Sec., Inc., 97 Civ. 1083, 2000 WL 890229 at *3 (S.D.N.Y. June 30, 2000), aff'd, 1 F. App'x 82 (2d Cir. 2001); Lavin-McEleny v. Marist Coll., 96 Civ. 4081, 1999 WL 33500070 at *3 (S.D.N.Y. Sep. 28, 1999), aff'd, 239 F.3d 476 (2d Cir. 2001); N.S.N. Int'l Indus. N.V. v. E. I. DuPont de Nemours & Co., 89 Civ. 1692, 1996 WL 154182 at *2 (S.D.N.Y. Apr. 3, 1996) (Peck, M.J.); see, e.g., Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

with rates awarded by the courts in other FLSA or similar statutory fee cases." (citing cases)).

Mr. Yan's rate is higher than that awarded to lawyers of equivalent experience. See, e.g., Siegel v. Bloomberg L.P., 13 Civ. 1351, 2016 WL 1211849 at *6 (S.D.N.Y. Mar. 22, 2016) (awarding $275 per hour to attorney with six years of experience, and $350 to attorney with thirteen years of experience); Kernes v. Glob. Structures, LLC, 15 Civ. 00659, 2016 WL 880199 at *10 (S.D.N.Y. Mar. 1, 2016) (awarding $250 per hour to third-year associate); Guaman v. J & C Top Fashion, Inc., 14 Civ. 8143, 2016 WL 791230 at *10 (S.D.N.Y. Feb. 22, 2016) (awarding $275 per hour to attorney with "less than 9 years of practice" and $175 to two attorneys who had graduated law school in 2013 and 2014, respectively); Cordova v. D & D Rest., Inc., 14 Civ. 8789, 2015 WL 6681099 at *9 (S.D.N.Y. Oct. 29, 2015) (awarding $400 per hour to attorney with eighteen years of experience).[64/]

The Court therefore reduces Yan's rate to $350 per hour. That reduces the fee request to $28,203 (80.58 hours times $350 per hour).

## 2.    Time Reasonably Expended

In determining whether the amount of hours billed is reasonable, "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434, 103

---

[64/]    See also, e.g., Koszkos v. Janton Indus., Inc., No. 15-CV-1700, 2016 WL 4444329 at *8 (E.D.N.Y. Aug. 3, 2016) (awarding $200 per hour to attorneys with five years of experience and $175 to attorney with two years of experience), R. & R. adopted, 2016 WL 4444782 (E.D.N.Y. Aug. 23, 2016); Alvarez v. 894 Pizza Corp., No. 14-CV-6011, 2016 WL 4536574 at *7 (E.D.N.Y. Aug. 2, 2016) (awarding $400 to partner with eighteen years of experience, and $300 to attorney with twelve years of experience), R. & R. adopted, 2016 WL 4540817 (E.D.N.Y. Aug. 30, 2016); Saldana v. New Start Grp., Inc., No. 14CV4049, 2016 WL 3683530 at *3 (E.D.N.Y. July 6, 2016) (awarding $400 per hour to "solo practitioner with almost 20 years of experience and 14 years of experience in the area of labor and employment law" and $300 to solo practitioner with seven years of experience).

S. Ct. 1933, 1939-40 (1983)).[65/]  "In so doing, 'the district court does not play the role of an

uninformed arbiter but may look to its own familiarity with the case and its experience generally as

well as to the evidentiary submissions and arguments of the parties.'" <u>Bliven</u> v. <u>Hunt</u>, 579 F.3d at

213.[66/]  "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney

would have engaged in similar time expenditures.'" <u>Cesario</u> v. <u>BNI Constr., Inc.</u>, 07 Civ. 8545, 2008

WL 5210209 at *7 (S.D.N.Y. Dec. 15, 2008) (quoting <u>Grant</u> v. <u>Martinez</u>, 973 F.2d 96, 99 (2d Cir.

1992), <u>cert. denied</u>, 506 U.S. 1053, 113 S. Ct. 978 (1993)), <u>R. & R. adopted</u>, 2009 WL 424136

(S.D.N.Y. Feb. 19, 2009); <u>see</u>, <u>e.g.</u>, <u>Louis Vuitton Malletier S.A.</u> v. <u>LY USA, Inc.</u>, 676 F.3d 83, 111

(2d Cir. 2012) ("In assessing the reasonableness of attorney's fees, a court looks to the amount of

time spent as reflected in contemporaneous time records, and then decides how much of that time

was 'reasonably expended.'  If the district court finds that some of the time was not reasonably

necessary to the outcome of the litigation, it should reduce the time for which compensation is

awarded accordingly." (citation omitted)).[67/]

       Plaintiffs cannot recover for time spent by attorneys completing administrative tasks.

<u>See</u>, <u>e.g.</u>, <u>Sheet Metal Workers' Nat'l Pension Fund</u> v. <u>Coverex Corp. Risk Sols.</u>, 2015 WL 344896

at *13; <u>DeMarco</u> v. <u>Ben Krupinksi Gen. Contractor, Inc.</u>, No. 12-CV-0573, 2014 WL 3696020 at

*9 (E.D.N.Y. July 22, 2014); <u>Lane Crawford LLC</u> v. <u>Kelex Trading (CA) Inc.</u>, 12 Civ. 9190, 2013

---

[65/]    <u>Accord</u>, <u>e.g.</u>, <u>Sheet Metal Workers' Nat'l Pension Fund</u> v. <u>Coverex Corp. Risk Sols.</u>, No. 09-CV-121, 2015 WL 3444896 at *12 (E.D.N.Y. May 28, 2015); <u>Abdell</u> v. <u>City of N.Y.</u>, 05 Civ. 8453, 2015 WL 898974 at *2 (S.D.N.Y. Mar. 2, 2015); <u>Deng</u> v. <u>278 Gramercy Park Grp. LLC</u>, 12 Civ. 7803, 2014 WL 1016853 at *12 (S.D.N.Y. Mar. 14, 2014), <u>R. & R. adopted</u>, 2014 WL 4996255 (S.D.N.Y. Oct. 7, 2014).

[66/]    <u>Accord</u>, <u>e.g.</u>, <u>Abdell</u> v. <u>City of N.Y.</u>, 2015 WL 898974 at *2.

[67/]    <u>See also</u>, <u>e.g.</u>, <u>Deng</u> v. <u>278 Gramercy Park Grp. LLC</u>, 2014 WL 1016853 at *12.

WL 6481354 at *8 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.), <u>R. & R. adopted</u>, 2014 WL 1338065

(S.D.N.Y. Apr. 3, 2014); <u>E.S.</u> v. <u>Katonah-Lewisboro Sch. Dist.</u>, 796 F. Supp. 2d 421, 431 (S.D.N.Y.

2011) ("A court may make [across-the-board percentage] reductions when attorneys engage in less

skilled work, like filing and other administrative tasks [such as] . . . faxing and mailing documents,

making copies, filing, scanning, preparing documents for electronic filing, electronic file

management, binding documents, and Bates stamping."), <u>aff'd</u>, 487 F. App'x 619 (2d Cir. 2012).[68]

        Second, case law also makes clear that the Court may reduce the fees requested for

billing entries that are vague and do not sufficiently demonstrate what counsel did.  <u>See, e.g.</u>, <u>Sheet</u>

<u>Metal Workers' Nat'l Pension Fund</u> v. <u>Coverex Corp. Risk Sols.</u>, 2015 WL 344896 at *12; <u>Lane</u>

<u>Crawford LLC</u> v. <u>Kelex Trading (CA) Inc.</u>, 2013 WL 6481354 at *8; <u>Lucerne Textiles, Inc.</u> v.

<u>H.C.T. Textiles Co.</u>, 2013 WL 174226 at *8, *10 & n.19; <u>VFS Fin., Inc.</u> v. <u>Pioneer Aviation, LLC</u>,

08 Civ. 7655, 2009 WL 2447751 at *5 (S.D.N.Y. Aug. 11, 2009) (Peck, M.J.) ("Having reviewed

[plaintiff's] attorneys' time sheets, the Court believes that a number of [plaintiff's] attorneys' billing

entries are overly vague or duplicative, and that a percentage fee reduction therefore is

appropriate."); <u>J.S. Nicol, Inc.</u> v. <u>Peking Handicraft, Inc.</u>, 03 Civ. 1548, 2008 WL 4613752 at *4

---

[68]    See also, e.g., <u>Lucerne Textiles, Inc.</u> v. <u>H.C.T. Textiles Co.</u>, 12 Civ. 5456, 2013 WL 174226
at *7 (S.D.N.Y. Jan. 17, 2013) (Peck, M.J.), <u>R. & R. adopted</u>, 2013 WL 1234911 (S.D.N.Y.
Mar. 26, 2013); <u>Short</u> v. <u>Manhattan Apartments, Inc.</u>, 286 F.R.D. 248, 255 (S.D.N.Y. 2012);
<u>Ryan</u> v. <u>Allied Interstate, Inc.</u>, 882 F. Supp. 2d 628, 636 (S.D.N.Y. 2012) (Peck, M.J.); <u>All-</u>
<u>Star Mktg. Grp., LLC</u> v. <u>Media Brands Co.</u>, 775 F. Supp. 2d 613, 629 (S.D.N.Y. 2011)
(Berman, D.J. & Peck, M.J.) (reducing fees where entries "reflect work done at an attorney
rate that could and should have been done by a paralegal or secretary"); <u>Nat'l Audubon</u>
<u>Soc'y, Inc.</u> v. <u>Sonopia Corp.</u>, 09 Civ. 0975, 2010 WL 3911261 at *5 (S.D.N.Y. Sept. 1, 2010)
("[A]dditional set-offs are necessary to account for the time spent on such less-skilled work
[such as] . . . completion of the civil cover sheet, review of ECF procedures, and meeting
with court clerks to discuss order to show cause and default judgment procedures."), <u>R. &</u>
<u>R. adopted</u>, 2010 WL 5373900 (S.D.N.Y. Dec. 22, 2010); <u>Tucker</u> v. <u>City of N.Y.</u>, 704 F.
Supp. 2d 347, 356 (S.D.N.Y. 2010).

(S.D.N.Y. Oct. 17, 2008) (Peck, M.J.) ("A time entry is vague if it lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed.  Where billing records are vague, a [percentage] reduction in fees is . . . appropriate." (citations, quotations & fn. omitted)).[69/]

Third, a reduction is warranted where the hours billed are disproportionate to the quantity or quality of the attorneys' work.  See, e.g., Lane Crawford LLC v. Kelex Trading (CA) Inc., 2013 WL 6481354 at *9; Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *8, *10; Harris v. Fairweather, 11 Civ. 2152, 2012 WL 3956801 at *8 (S.D.N.Y. Sept. 10, 2012) (Peck, M.J.) ("In determining the reasonableness of the requested attorneys' fees, the Court considers the quality of the work done by the attorneys. . . .  In light of the mediocre attorney performance, the vague billing entries and excessive time spent on certain tasks, the Court should reduce the total attorneys' fees . . . ." (citing cases)), R. & R. adopted, 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012); Rolex Watch, U.S.A., Inc. v. Pharel, No. 09 CV 4810, 2011 WL 1131401 at *7 (E.D.N.Y. Mar. 11, 2011) (reduction warranted where brief "did not contain particularly complicated analyses" and omitted certain arguments entirely), R. & R. adopted, 2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011); Gesualdi v. Cirillo, No. 09-CV-4570, 2011 WL 666196 at *5 (E.D.N.Y. Jan. 3, 2011) (reduction

---

[69/]    See also, e.g., Prince of Peace Enter., Inc. v. Top Quality Food Mkt. LLC, 07 Civ. 349, 2014 WL 793084 at *7 (S.D.N.Y. Feb. 28, 2014), R. & R. adopted in relevant part, 2015 WL 456645 (S.D.N.Y. Feb. 3, 2015); Short v. Manhattan Apartments, Inc., 286 F.R.D. at 255 ("A court may reduce requested fees if the attorneys' documentation of their hours is vague . . . ."); Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d at 636; Carrasco v. W. Vill. Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *7 (S.D.N.Y. July 11, 2012) (Peck, M.J.) (reducing attorney's hours where "some of the billing entries are vague and the time spent excessive"), R. & R. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012); Gordon v. Site 16/17 Dev., LLC, 11 Civ. 0427, 2011 WL 3251520 at *5 (S.D.N.Y. July 28, 2011) (Peck, M.J.) ("When time records reflect vague and duplicative entries, and entries for attorneys performing ministerial tasks, the Court may order a reduction in attorneys' fees." (citing cases)).

warranted where "the 26.1 total hours billed on this matter do not reflect the quality of work submitted to the Court"), R. & R. adopted, 2011 WL 666197 (E.D.N.Y. Feb. 14, 2011).[70]

Plaintiffs' counsel provides contemporaneous billing records and seeks $32,232 for 80.58 hours of work by Mr. Yan. (Dkt. No. 53: Yan Aff. Ex. M.) The Court already has reduced that to $28,203. (See page 40 above.) The Court finds that the billing records reflect numerous tasks that were secretarial/administrative in nature.[71] As a result, the Court finds that a fifteen percent across-the-board reduction is appropriate, resulting in $23,972.55 for attorneys' fees. See, e.g., Cortes v. New Creators, Inc., 15 Civ. 5680, 2016 WL 3455383 at *8-9 (S.D.N.Y. June 20, 2016) (applying 15% reduction to compensate for issues including excessive and duplicative billing on certain tasks); Clarke v. Hudson Valley Fed. Credit Union, 14 Civ. 5291, 2016 WL 884667 at

---

[70] See also, e.g., Deng v. 278 Gramercy Park Grp. LLC, 2014 WL 1016853 at *20-21 (reduction warranted for, inter alia, disproportionate time spent on one plaintiff's claims although they were the same as the other plaintiff's claims, overstaffing, duplicative work, and failure to submit any documentation to support fees for time spent preparing "a memorandum that is remarkably devoid of law"); Truong v. N.Y. Hotel & Motel Trades Council, AFL-CIO, 07 Civ. 11383, 2011 WL 147689 at *3 (S.D.N.Y. Jan. 12, 2011) ("The Court is unclear as to why this document, presumptively a standard form order, took up 8.75 hours of an associate[']s time. Thus the Court reduces [counsel's] billables . . . ."); OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc., 09 Civ. 8665, 2010 WL 5538552 at *5 (S.D.N.Y. Dec. 6, 2010) (reduction warranted where "attorneys spent a total of 7.6 hours on the drafting of a cease-and-desist letter and related activities" and excessive time was spent drafting a "nearly identical" document that "appears to be boilerplate"), R. & R. adopted, 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011); Microsoft Corp. v. Computer Care Ctr., Inc., No. 06-CV-1429, 2008 WL 4179653 at *16 (E.D.N.Y. Sept. 10, 2008) (reducing fees where attorney "spent an excessive amount of time [1.9 hours, or $950] composing a two-page letter to the Court requesting an extension of the discovery deadline").

[71] For example, Yan billed five hours for tasks involving merely scanning, mailing, or delivering files. (Ex. M: Yan Time Sheet: 9/24/15 Time Entry; 2/25/16 Time Entry; 8/25/16 Time Entry; 12/7/16 Time Entry.) Mr. Yan billed five hours for docketing various files with the court. (Ex. M: Yan Time Sheet: 9/24/15 Time Entry; 10/10/15 Time Entry; 4/1/16 Time Entry; 9/20/16 Time Entry; 12/7/16 Time Entry.) Since 15% of 80.58 hours is a little over 12 hours, and at least 10 hours are listed here, the reduction below certainly is appropriate.

*8 (S.D.N.Y. Mar. 8, 2016) (15% reduction to eliminate "excessive and unnecessary work performed"); Lane Crawford LLC v. Kelex Trading (CA) Inc., 12 Civ. 9190, 2013 WL 6481354 at *9-10 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.) (reducing attorneys' fees by 15% for excessive time and vague, duplicative billing entries), R. & R. adopted, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014); M.C. v. Dep't of Educ., 12 Civ. 9281, 2013 WL 2403485 at *14 (S.D.N.Y. June 4, 2013) (Peck, M.J.) (20% reduction for excessive and vague billing entries), R. & R. adopted, 2013 WL 3744066 (S.D.N.Y. June 28, 2013); Carter v. Wolf, No. 06CV1351, 2013 WL 1946827 at *5 (D. Conn. May 9, 2013) ("The Court finds that an additional 15 percent reduction for vague and/or excessive entries is warranted."); Harris v. Fairweather, 11 Civ. 2152, 2012 WL 3956801 at *8 (S.D.N.Y. Sept. 10, 2012) (Peck, M.J.) ("In light of the mediocre attorney performance, the vague billing entries and excessive time spent on certain tasks, the Court should reduce the total attorneys' fees sought by twenty percent . . . ."), R. & R. adopted, 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012).

## III.    DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE

Plaintiffs allege that Kai Xiang Dong and Ling Lin were the principals of Iron Sushi and exercised significant control over the terms and conditions of their employment. (See page 2 above.) Under both the FLSA and NYLL, individual defendants Dong and Lin are considered employers and thus individually liable along with Iron Sushi. 29 U.S.C. § 203(d); N.Y.L.L. §§ 2(5)-(6); see, e.g., Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139-40 (2d Cir. 1999); Andrade v. 168 First Ave Rest. Ltd., 14 Civ. 8268, 2016 WL 3141567 at *12 (S.D.N.Y. June 3, 2016) (Peck, M.J.), R. & R. adopted, 2016 WL 3948101 (S.D.N.Y. July 19, 2016); Guaman v. Krill Contracting, Inc., No. 14-CV-4242, 2015 WL 3620364 at *3 (E.D.N.Y. June 9, 2015); Liu v. Jen Chu Fashion Corp., 00 Civ. 4221, 2004 WL 33412 at *6 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.); Chung v. New Silver Palace Rest., Inc., 272 F. Supp. 2d 314, 318 & n.6 (S.D.N.Y. 2003) (test for employer under N.Y.

Labor Law is same as <u>Herman</u> test under FLSA).  Because defendants defaulted, they cannot now

challenge liability, and thus are held jointly and severally liable.  <u>See</u>, <u>e.g.</u>, <u>Greyhound Exhibitgroup,</u>

<u>Inc.</u> v. <u>E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158, 161 (2d Cir. 1992) ("[A] party's default is deemed

to constitute a concession of all well pleaded allegations of liability . . . ."), <u>cert. denied</u>, 506 U.S.

1080, 113 S. Ct. 1049 (1993); <u>Andrade</u> v. <u>168 First Ave Rest. Ltd.</u>, 2016 WL 3141567 at *12;

<u>Mestousis Enters. Inc.</u>, v. <u>Concord Blue Inc.</u>, 11 Civ. 3384, 2012 WL 254987 at *5 n.13 (S.D.N.Y.

Jan. 27, 2012) (Peck, M.J.), <u>R. & R. adopted</u>, 2012 WL 1193752 (S.D.N.Y. Apr. 10, 2012); <u>Felix</u>

<u>Produce Corp.</u>, v. <u>New Lots Food Corp.</u>, No. 08-CV-5161, 2009 WL 2985444 at *2 (E.D.N.Y. Sept.

14, 2009) ("By virtue of the well-pleaded factual allegations in the complaint which are deemed true

by virtue of [defendants'] default, the undersigned finds that [plaintiff] has established joint and

several liability . . . ."); <u>Ting Yao Lin</u> v. <u>Hayashi</u>, 08 Civ. 6071, 2009 WL 289653 at *8 (S.D.N.Y.

Jan. 30, 2009) (Peck, M.J.); <u>La Barbera</u> v. <u>Les Sub-Surface Plumbing, Inc.</u>, No. 06 CV 3343, 2008

WL 906695 at *4 (E.D.N.Y. Apr. 3, 2008) ("[P]laintiffs have adequately pled, and by virtue of

defendants' default, have established the joint and several liability of" defendants); <u>Chaman LAL</u>

<u>Setia Exports Ltd.</u> v. <u>Sawhney</u>, 00 Civ. 2838, 2003 WL 21649652 at *4 (S.D.N.Y. May 28, 2003)

("[D]efendants' joint and several liability is established by the allegations made in the complaint and

[the District Judge's] granting of a default judgment.").

## CONCLUSION

For the reasons discussed above, the Court should grant plaintiffs' motion (Dkt. No.

51) and enter judgment for plaintiffs against defendants, jointly and severally, as follows:

| | Min Wage + Overtime | Spread of Hours | Total NYLL Liquidated Damages | Tools of Trade | Statutory Damages | Pre-Judgment Interest | Total |
|---|---|---|---|---|---|---|---|
| Changxing Li | 62,981.03 | 7,450.72 | 70,431.75 | 2,611.43 | 10,000 | 5,719.92 | 88,763.10 |
| Guomon Li | 67,765.63 | 8,706 | 76,471.63 | 2,904.29 | 10,000 | 10,827.40 | 100,203.32 |
| Jian Li | 27,233.99 | 2,975.79 | 30,209.78 | 1,634.29 | 5,000 | 754.82 | 37,607.89 |
| Yuxiang Wang | 59,100.89 | 5,314.11 | 64,415 | 2,364.29 | 10,000 | 3,896.39 | 80,675.68 |
| Min Zhang | 32,885.05 | 2,900.54 | 35,785.59 | 1,692.86 | 10,000 | 576.72 | 48,055.17 |
| Attorneys' Fees & Costs | | | | | | | 24,372.55 |
| Grand Total | | | | | | | 379,677.71 |

Plaintiffs' counsel is to serve a copy of this Report and Recommendation on

defendants and file proof of service on ECF.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be

filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable

George B. Daniels, 500 Pearl Street, Room 1310, and to my chambers, 500 Pearl Street, Room 1370.

Any requests for an extension of time for filing objections must be directed to Judge Daniels (with

a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those

48

objections for purposes of appeal.  <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>Ingram</u> v.

<u>Herrick</u>, 475 F. App'x 793, 793 (2d Cir. 2012); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d

1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Frank</u> v. <u>Johnson</u>, 968

F.2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health</u>

<u>& Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d

Cir. 1988); <u>McCarthy</u> v. <u>Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:        New York, New York
              March 7, 2017


                                   Respectfully submitted,


                                   _____
                                   **Andrew J. Peck**
                                   United States Magistrate Judge


Copies to:       Counsel (ECF)
                 Judge Daniels